1   DAVID J. BERGER, State Bar No. 147645
    JEROME F. BIRN, JR., State Bar No. 128561
2   JONI OSTLER, State Bar No. 230009
    ELIZABETH R. GAVIN, State Bar No. 305017
3   WILSON SONSINI GOODRICH & ROSATI
    Professional Corporation
4   650 Page Mill Road
    Palo Alto, CA 94304-1050
5   Telephone:  (650) 493-9300
    Facsimile:   (650) 565-5100
6   Email:  dberger@wsgr.com
    Email:  jbirn@wsgr.com
7   Email:  jostler@wsgr.com
    Email:  bgavin@wsgr.com
8
    *Attorneys for Defendants*
9   *Gigamon Inc., Corey M. Mulloy, Paul A.*
    *Hooper, Arthur W. Coviello, Jr., Joan*
10  *Dempsey, Ted C. Ho, John H. Kispert, Paul*
    *Milbury, Michael C. Ruettgers, Robert E.*
11  *Switz, and Dario Zamarian*

12

13                    UNITED STATES DISTRICT COURT

14                   NORTHERN DISTRICT OF CALIFORNIA

15

16  JOHN E. GOLUB, Individually and on Behalf of   )   CASE NO.:  3:17-cv-06653-WHO
    All Others Similarly Situated,                 )
17                                                 )   GIGAMON DEFENDANTS' REPLY
                      Lead Plaintiff,              )   IN SUPPORT OF MOTION TO
18                                                 )   DISMISS
              v.                                   )
19                                                 )
    GIGAMON INC., COREY M. MULLOY, PAUL            )
20  A. HOOPER, ARTHUR W. COVIELLO, JR.,            )
    JOAN DEMPSEY, TED C. HO, JOHN H.               )
21  KISPERT, PAUL MILBURY, MICHAEL C.              )   Judge: Hon. William H. Orrick
    RUETTGERS, ROBERT E. SWITZ, DARIO              )   Ctrm:  2, 17th Floor
22  ZAMARIAN, ELLIOTT MANAGEMENT                   )   Date:  February 20, 2019
    CORPORATION, ELLIOTT ASSOCIATES,               )   Time:  2:00 p.m.
23  L.P., ELLIOTT INTERNATIONAL, L.P.,             )
    EVERGREEN COAST CAPITAL, GINSBERG              )
24  HOLDCO, INC., and GINSBERG MERGER              )
    SUB, INC.,                                     )
25                                                 )
                      Defendants.                  )
26  _____)

27

28

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................ 1

I.     THE COMPLAINT FAILS TO STATE A CLAIM BASED ON STATEMENTS
       ABOUT THE BOARD'S VIEWS OF THE DIFFERENT SETS OF
       PROJECTIONS ......................................................................................................... 2

       A.     The Challenged Statements about Gigamon's Projections are Protected by
              the PSLRA Safe Harbor. ............................................................................... 2

              1.     The Challenged Statements Were Forward-Looking ........................... 2

              2.     The Statements Were Identified as Forward-Looking and
                     Accompanied by Meaningful Cautionary Language ............................ 6

              3.     The Safe Harbor Applies for the Independent Reason that Plaintiff
                     Fails to Adequately Allege Actual Knowledge of Falsity .................... 6

       B.     Plaintiff Does Not Adequately Allege a False or Misleading Statement of
              Opinion ........................................................................................................... 7

              1.     Plaintiff Fails to Plead Specific Facts Showing Both Objective and
                     Subjective Falsity ................................................................................. 7

                     a.     Plaintiff Fails to Plead that the Updated Case C Projections
                            Were Objectively False .............................................................. 8

                     b.     Plaintiff Fails to Plead that Defendants Did Not Believe that
                            the Updated Case C Projections Reflected a Better Estimate
                            of Gigamon's Long-Term Prospects ........................................ 11

              2.     Plaintiff Fails to Allege a Claim Under *Omnicare* .......................... 12

II.    PLAINTIFF FAILS TO ALLEGE PARTICULARIZED FACTS GIVING RISE
       TO A STRONG INFERENCE OF THE REQUIRED STATE OF MIND .................... 13

CONCLUSION ................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Azar v. Blount Int'l, Inc.*,
    No. 3:16-cv-483-SI, 2017 U.S. Dist. LEXIS 39493 (D. Or. Mar. 20, 2017) ...............9, 14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................................11

*Brown v. Brewer*,
    No. CV 06-3731-GHK, 2010 WL 2472182 (C.D. Cal. June 17, 2010)...........................14

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
    856 F.3d 605 (9th Cir. 2017).......................................................................................13

*City of Hialeah Emps.' Ret. Sys. v. FEI Co.*,
    289 F. Supp. 3d 1162 (D. Or. 2018)....................................................................*passim*

*City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*,
    No. 12-cv-0256 (LAK), 2016 WL 6652731 (S.D.N.Y. Nov. 10, 2016) ...........................8

*Grobler v. Neovasc Inc.*,
    No. 16-11038-RGS, 2016 U.S. Dist. LEXIS 161849
    (D. Mass Nov. 22, 2016) ..............................................................................................3

*Hampton v. Root9B Techs., Inc.*,
    897 F.3d 1291 (10th Cir. 2018)....................................................................................10

*In re Cutera Sec. Litig.*,
    610 F.3d 1103 (9th Cir. 2010)....................................................................................3, 7

*In re Daou Sys., Inc.*,
    411 F.3d 1006 (9th Cir. 2005).......................................................................................7

*In re ECOtality, Inc. Sec. Litig.*,
    No. 13-03791-SC, 2014 U.S. Dist. LEXIS 130499
    (N.D. Cal. Sept. 16, 2014)............................................................................................5

*In re Hot Topic, Inc. Sec. Litig.*,
    No. CV 13-02939 SJO, 2014 WL 7499375 (C.D. Cal. May 2, 2014) ........................8, 12

*In re Jones Soda Co. Sec. Litig.*,
    No. C07-1366 RSL, 2009 U.S. Dist. LEXIS 9297
    (W.D. Wash. Feb. 9, 2009) ........................................................................................10

*In re Maxim Integrated Prods.*,
    574 F. Supp. 2d 1046 (N.D. Cal. 2008) ......................................................................15

*In re McKesson HBOC, Inc. Sec. Litig.*,
    126 F. Supp. 2d 1248 (N.D. Cal. 2000) ...................................................................6, 15

*In re Quality Sys., Inc. Sec. Litig.*,
    865 F.3d 1130 (9th Cir. 2017), *cert. dismissed*, – S. Ct. –, 2
    018 U.S. Dist. LEXIS 6933 (Nov. 27, 2018) ...............................................................4, 7

*In re Read-Rite Corp.*,
    335 F.3d 843 (9th Cir. 2003), *abrogated on other grounds as recognized in*
    *S. Ferry, L.P. No. 2 v. Killinger*, 542 F.3d 776 (9th Cir. 2008) ..............................9, 10, 11

*Kelley v. Rambus, Inc.*,
    No. C 07-1238 JF (HRL), 2008 U.S. Dist. LEXIS 100319
    (N.D. Cal. Dec. 9, 2008) .................................................................................................14

*Knollenberg v. Harmonic, Inc.*,
    152 F. App'x 674 (9th Cir. 2005)................................................................................6, 14

*Laborer's Local #231 Pension Fund v. Cowan*,
    No. 17-478, 2018 WL 3243975 (D. Del. July 2, 2018) .............................................4, 6, 8

*M&M Hart Living Tr. v. Glob. Eagle Entm't, Inc.*,
    No. CV 17-1479 PA, 2017 U.S. Dist. LEXIS 182106
    (C.D. Cal. Oct. 30, 2017), *appeal filed*, No. 18-55122
    (9th Cir. Jan. 28, 2018)...................................................................................................3, 4

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
    540 F.3d 1049 (9th Cir. 2008)...........................................................................................11

*Mulligan v. Impax Labs., Inc.*,
    36 F. Supp. 3d 942 (N.D. Cal. 2014) .................................................................................4

*NECA-IBEW Pension Trust Fund v. Precision Castparts Corp.*,
    No. 3:16-cv-01756-01756-YY, 2017 WL 4453561 (D. Or. Oct. 3, 2017) .........4, 8, 12, 14

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
    135 S. Ct. 1318 (2015)...................................................................................7, 8, 12, 13

*Police Ret. Sys. v. Intuitive Surgical, Inc.*,
    759 F.3d 1051 (9th Cir. 2014)........................................................................................3, 5

*Ronconi v. Larkin*,
    253 F.3d 423 (9th Cir. 2001).........................................................................................9, 10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ...........................................................................................................11

*Trahan v. Interactive Intelligence Grp., Inc.*,
    308 F. Supp. 3d 977 (S.D. Ind. 2018) ......................................................................2, 7, 8

*Virginia Bankshares, Inc. v. Sandberg*,
    501 U.S. 1083 (1991) ......................................................................................................7, 8

*West v. eHealth, Inc.*,
    No. 3:15-cv-00360-JD, 2016 U.S. Dist. LEXIS 33429
    (N.D. Cal. Mar. 14, 2016) ..................................................................................................10

*Wochos v. Tesla, Inc.*,
    No. 17-cv-05828-CRB, 2018 U.S. Dist. LEXIS 145696
    (N.D. Cal. Aug. 24, 2018) ...................................................................................................5

*Yourish v. Cal. Amplifier*,
    191 F.3d 983 (9th Cir. 1999)..............................................................................................10

1

## STATUTES

2   15 U.S.C. § 78u-5(c)(1)................................................................................................................2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF ABBREVIATIONS**

| | |
|---|---|
| "¶" or "Complaint" | Consolidated Complaint for Violations of Securities Exchange Act of 1934 (ECF No. 56) filed August 10, 2018 |
| "Defendants" | Gigamon, Inc., Corey M. Mulloy, Paul A. Hooper, Arthur W. Coviello, Jr., Joan Dempsey, Ted C. Ho, John H. Kispert, Paul Milbury, Michael C. Ruettgers, Robert E. Switz, and Dario Zamarian |
| "Gavin Decl. Ex." | Exhibits attached to the Declaration of Elizabeth R. Gavin in Support of Gigamon Defendants' Motion to Dismiss Consolidated Complaint for Violations of Securities Exchange Act of 1934 (ECF No. 69-1), filed October 12, 2018 |
| "Gigamon" | Gigamon, Inc. |
| "Gigamon Defendants" | Gigamon, Inc., Corey M. Mulloy, Paul A. Hooper, Arthur W. Coviello, Jr., Joan Dempsey, Ted C. Ho, John H. Kispert, Paul Milbury, Michael C. Ruettgers, Robert E. Switz, and Dario Zamarian |
| "MTD" | Gigamon Defendants' Motion to Dismiss Consolidated Complaint for Violations of Securities Exchange Act of 1934 (ECF No. 69) filed October 12, 2018 |
| "Opp." | Lead Plaintiff's Omnibus Memorandum in Opposition to Defendants' Motions to Dismiss (ECF No. 73), filed November 30, 2018 |
| "PSLRA" | Private Securities Litigation Reform Act, 15 U.S.C. §§ 78u-4, 78u-5 |
| "PSLRA Safe Harbor" | 15 U.S.C. § 78u-5 |

1

**INTRODUCTION**

2     Plaintiff's case essentially is based on one statement in the proxy: "the Updated Case C

3  Projections appeared to reflect a better estimate of Gigamon's long-term prospects" than the

4  Case B Projections.  That statement is a forward-looking statement immunized from liability by

5  the PSLRA Safe Harbor.  Plaintiff's opposition dances around, arguing that he does not attack

6  the projections "*per se*", but rather, Defendants' *opinion* that the Updated Case C Projections

7  were more likely.  Opp. at 1, 11.  Courts repeatedly have rejected such a disingenuous and

8  artificial distinction, recognizing it as a transparent attempt to do an end-run around the Safe

9  Harbor.

10     Plaintiff also tries to characterize his case as based on a material omission that rendered

11  Defendants' opinion about the Updated Case Projections misleading under *Omnicare*.  But the

12  allegedly omitted "fact" is that Gigamon's Q4 2017 results turned out to be higher than predicted

13  by the Updated Case C Projections.  However Plaintiff characterizes it, this is a false forecast

14  case alleging that the Updated Case C Projections were too pessimistic and the Safe Harbor

15  applies.  Moreover, no basis is pled to show that Defendants actually knew how Q4 would turn

16  out when they filed the Proxy on November 24 or at any other time before the merger closed.

17     Even if the Safe Harbor does not apply, Plaintiff has not adequately alleged a claim.  The

18  only basis Plaintiff asserts to support an inference that the Updated Case C Projections were false

19  is Gigamon's May 3, 2018 press release, which stated only that Gigamon had a "record-setting

20  close" in 2017.  As Defendants explained, the Updated Case C Projections forecasted a record-

21  setting close to 2017:  they forecasted the highest quarterly revenues and the highest full year

22  revenues in Gigamon's history.  Thus, the May 3 press release is consistent with the Updated

23  Case C Projections.  Plaintiff argues that, when this press release said "record-setting close,"

24  these plain words should be read to mean "record-setting *year-over-year growth.*"  Plaintiffs

25  cannot rewrite the Company's own words to invent a securities claim.  It is Plaintiff's burden to

26  plead facts showing that the actual words used are *necessarily inconsistent with* the challenged

27  statements, and Plaintiff has not and cannot meet that burden.

28

The Complaint fails to meet the PSLRA's exacting standards. Because amendment would be futile, the case should be dismissed with prejudice.

## I.  THE COMPLAINT FAILS TO STATE A CLAIM BASED ON STATEMENTS ABOUT THE BOARD'S VIEWS OF THE DIFFERENT SETS OF PROJECTIONS

### A.  The Challenged Statements about Gigamon's Projections are Protected by the PSLRA Safe Harbor

#### 1.  The Challenged Statements Were Forward-Looking

Defendants showed that the PSLRA Safe Harbor applies here.  MTD at 12-13.  Plaintiff challenges as false statements that "the Case C Projections appeared to reflect a better estimate of Gigamon's long-term prospects" than the Case B Projections (¶ 130(c), (d)).  These are classic forward-looking statements under the PSLRA Safe Harbor.  MTD at 12.[1]

In response, Plaintiff argues that the Safe Harbor only applies in "fraud by hindsight" lawsuits "when forward-looking financial projections are subsequently missed."  Opp. at 20. This is incorrect.  The courts in both *FEI* and *Trahan* rejected this same argument because it "finds no support in the statutory text or judicial precedent."  *Trahan v. Interactive Intelligence Grp., Inc.*, 308 F. Supp. 3d 977, 987 n.11 (S.D. Ind. 2018); *see City of Hialeah Emps.' Ret. Sys. v. FEI Co.*, 289 F. Supp. 3d 1162, 1171 (D. Or. 2018) ("The text of the statute does not support this narrow application" and "[p]laintiff cites no case law giving the [safe harbor] such a confined reading").  By its express language, the Safe Harbor applies in "any private action arising under [the Exchange Act] that is based on an untrue statement of a material fact or omission of a material fact necessary to make the statement not misleading."  15 U.S.C. § 78u-5(c)(1).  Nothing in the statutory language limits the Safe Harbor to incorrect forecasts or to cases alleging "fraud by hindsight."  Plaintiff fails to cite a single case so holding.  Opp. at 20.

In any event, Plaintiff's theory here is logically no different from a fraud-by-hindsight case.  Plaintiff contends that Defendants acted fraudulently when they stated that the Updated

---

[1] Plaintiff also challenges the Board's present-tense statement that they believed the merger was fair but, as he concedes, this claim is based on his contention that the Updated Case C Projections were incorrect (Opp. at 8; ¶ 129).  As shown herein, Plaintiff has failed to adequately plead that underlying contention.  Thus, Plaintiff's challenge to the Board's opinion that the merger was fair also fails.  *See Trahan v. Interactive Intelligence Grp., Inc.*, 308 F. Supp. 3d 977, 998-99 (S.D. Ind. 2018) (dismissing attack on opinion that the merger was fair. which rested on the same inadequate allegations as plaintiff's attack on forecasts and other statements).

1   Case C Projections were their best estimate of Gigamon's future because it allegedly turned out

2   that the Case B Projections were closer to Gigamon's results for Q4 2017 and fiscal 2017.  *See*

3   Opp. at 15, 17-18 (arguing that falsity is established by later statement that Gigamon had a

4   "record close" to 2017); ¶¶ 136-137 (same).  That is pure fraud-by-hindsight.  *FEI*, 289 F. Supp.

5   3d at 1171-72 (an attack on projections in a merger proxy is not meaningfully different from

6   standard "fraud by hindsight" lawsuits).  No facts are alleged showing that Defendants knew

7   when they filed the Proxy that Case B allegedly would be the better forecast.

8          Plaintiff next argues that the Safe Harbor does not apply because Plaintiff does not

9   challenge the truth of the projections themselves, but rather, the Board's "contemporaneous

10   beliefs" that the Updated Case C projections reflected a better estimate of Gigamon's long-term

11   prospects than the Case B Projections.  Opp. at 21; *see also id.* at 11 (arguing that he challenges

12   the Board's *opinion* about which projections were more likely, and not the projections

13   themselves).  This argument rests upon a specious distinction that has been repeatedly rejected.

14   As the court in *FEI* noted, every projection contains the inherent assertion that the person making

15   the projection believes it.  To accept "the view that an expression of 'present belief' in a forward-

16   looking statement is a 'present fact'—and therefore not itself a forward-looking statement—

17   would work an end-run around the PSLRA's safe harbor provision."  *FEI*, 289 F. Supp. 3d at

18   1173; *see Grobler v. Neovasc Inc.*, No. 16-11038-RGS, 2016 U.S. Dist. LEXIS 161849, at *14

19   (D. Mass Nov. 22, 2016) (rejecting same argument; "Virtually every statement about a future

20   event could be said to imply a statement of present belief" but "a moment's reflection" on the

21   PSLRA safe harbor reveals that such statements are still forward-looking).  Thus, "a defendant's

22   statement of its belief in or preference for a given projection is itself a forward-looking statement

23   that is protected."  *FEI*, 289 F. Supp. 3d at 1173.[2]

24

25         [2] Plaintiff also seems to argue that the Safe Harbor does not apply because he alleges that the projections omitted information about *present* facts (Opp. at 20-21), but that does not remove

26   Safe Harbor protection.  The Ninth Circuit has repeatedly found the Safe Harbor applicable to projections that were alleged to be misleading by omission of current facts.  *In re Cutera Sec.*

27   *Litig.*, 610 F.3d 1103, 1106, 1111-12 (9th Cir. 2010); *Police Ret. Sys. v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1057, 1058-59 (9th Cir. 2014); *see also M&M Hart Living Tr. v. Glob. Eagle*

28   *Entm't, Inc.*, No. CV 17-1479 PA (MRWx), 2017 U.S. Dist. LEXIS 182106, at *17 (C.D. Cal. Oct. 30, 2017) (safe harbor applied to projections even where plaintiffs did not allege the

(continued...)

Plaintiff's cases are distinguishable.  Opp. at 20-21.  In both *NECA-IBEW Pension Trust Fund v. Precision Castparts Corp.*, No. 3:16-cv-01756-01756-YY, 2017 WL 4453561 (D. Or. Oct. 3, 2017) and *Laborer's Local #231 Pension Fund v. Cowan*, No. 17-478, 2018 WL 3243975 (D. Del. July 2, 2018), the target companies employed the primary growth strategy of acquiring other companies.  In spite of this, when the target companies themselves were acquired, their boards used projections that *assumed no acquisitions* – in direct contravention of their companies' stated business plans, and despite the fact that the companies continued to actively pursue and close new acquisitions.  *Precision*, 2017 WL 4453561, at *1-4; *Cowan*, 2018 WL 3243975, at *3-5, *11, *13.  On these facts, the court in *Precision* found that the statement that the forecasts "reflected management's most up-to-date and accurate forecasts" (*Precision*, 2017 WL 4453561, at *6) was "properly construed as a present assessment of the company's intentions at the time of the proposed merger" – *i.e.*, it falsely conveyed a *present intention* to abandon Precision's acquisition strategy (*id.* at *11), and the proxy's stated reasons for excluding acquisitions from the forecasts was also a present-tense statement (*id.*).  In *Cowan*, the court found the plaintiff adequately alleged the falsity of the present tense statement that the board believed that the banker's fairness opinion was a "'positive reason' supporting its decision to approve the merger," because the board knew the fairness opinion rested on projections that failed to account for the company's acquisition-based strategy (*Cowan*, 2018 WL 3243975, at *10, *34).[3]

Here, in contrast to *Precision* and *Cowan*, Plaintiff does not challenge any of the Proxy's present-tense statements about the assumptions underlying the projections, or allege that the

---

(...continued from previous page)
projections were missed, but instead alleged the projections gave a false impression of current conditions), *appeal filed*, No. 18-55122 (9th Cir. Jan. 28, 2018).

[3] Plaintiff's other cases are also inapposite.  In *In re Quality Systems, Inc. Securities Litigation*, the Ninth Circuit held that the Safe Harbor did not protect the non-forward-looking portions of "mixed statements" that contained both present-tense aspects and forward-looking aspects, such as statements that the sales pipeline was "large" and "growing."  865 F.3d 1130, 1141-42, 1147 (9th Cir. 2017), *cert. dismissed*, – S. Ct. –, 2018 U.S. Dist. LEXIS 6933 (Nov. 27, 2018).  Here, Plaintiff challenges projections, not mixed statements.  In *Mulligan v. Impax Laboratories, Inc.*, the challenged statements were not forecasts but statements about the company's current efforts to respond to an FDA warning letter, such as a statement that tasks were "well under way."  36 F. Supp. 3d 942, 964 (N.D. Cal. 2014).

1    projections ignored the company's primary business strategy.  Plaintiff challenges only the

2    projections themselves and the Board's decision to favor the Updated Case C Projections over

3    the Case B Projections.  Opp. at 1, 15-16 (arguing the falsity of the Board's opinion is shown by

4    the alleged falsity of the Updated Case C Projections).  This is exactly like *FEI*, in which the

5    plaintiff challenged the board's statement that a lower set of projections "were more likely to

6    reflect the future business performance" of the company.  289 F. Supp. 3d at 1173 (citation

7    omitted).  Here, as in *FEI*, "[A] defendant's statement of its belief in or preference for a given

8    projection is itself a forward-looking statement that is protected."  *Id.*

9           Plaintiff also contends that the projections are not forward-looking statements because

10   the Board selected the Updated Case C Projections "based on current information" (Opp. at 21-

11   22) and "based on an assessment of the Company's then-current operative reality."  *Id.* at 2.  This

12   argument is equally specious: *any* forecast necessarily relies on assumptions drawn from current

13   information; the Safe Harbor expressly protects forecasts *and* assumptions.  *See, e.g.*, *Intuitive*,

14   759 F.3d at 1059 (statements of present assumptions underlying projections also fall within safe

15   harbor projection); *Wochos v. Tesla, Inc.*, No. 17-cv-05828-CRB, 2018 U.S. Dist. LEXIS

16   145696, at *16 (N.D. Cal. Aug. 24, 2018) (rejecting the same argument; "[E]very future

17   projection depends on the current state of affairs.  Were the Court to adopt Plaintiffs' conclusion,

18   the distinction between present statements and forward-looking statements would collapse."); *In*

19   *re ECOtality, Inc. Sec. Litig.*, No. 13-03791-SC, 2014 U.S. Dist. LEXIS 130499, at *20 (N.D.

20   Cal. Sept. 16, 2014) ("To some extent, every prediction, projection, or forward-looking statement

21   must be based on current conditions, unless it is totally divorced from reality.").  Plaintiff's

22   arguments would eliminate the protections of the Safe Harbor and must be rejected.

23          Finally, Plaintiff cannot salvage a claim by mischaracterizing what Defendants said.

24   Plaintiff asserts that the Proxy told investors that the Updated Case C Projections were the

25   projections "to rely on" "at the time of the Merger."  Opp. at 1; *see id.* at 12-13, 20-21.  To the

26   contrary, the Proxy in boldface text explicitly warned investors *not* to rely on the forecasts.

27   Gavin Decl. Ex. 1 at 59; *see* MTD at 14.  The Proxy stated that the forecasts were being

28   disclosed because they had been given to bidders and Goldman Sachs, and that management

1   believed the projections were reasonable *at the time they were prepared*.  The Proxy further

2   cautioned that Defendants "do not intend to update or otherwise revise" the forecasts "to reflect

3   circumstances existing after the date when made."  Gavin Decl. Ex. 1 at 59; *see id.* at 58 (the

4   forecasts "should not be relied upon as being necessarily indicative of actual future results.").  In

5   *Cowan*, upon which Plaintiff relies, the court held that a plaintiff could not state a Section 14(a)

6   claim based on forecasts in a proxy where the proxy contained warnings almost identical to those

7   here.  2018 WL 3243975, at *17-23.  As in *FEI* and *Cowan*, Plaintiff cannot sustain a claim

8   based upon the Updated Case C Projections.

9               **2.      The Statements Were Identified as Forward-Looking and**
                          **Accompanied by Meaningful Cautionary Language**
10

11          Defendants demonstrated that the challenged statements were identified as forward-

12  looking and accompanied by meaningful cautionary language.  MTD at 13-14.  Plaintiff does not

13  dispute this.  *See* Opp. at 22 n.12 (arguing only that challenged statements were not forward-

14  looking).  The Safe Harbor therefore applies and immunizes the challenged statements.  MTD at

15  13-14.

16              **3.      The Safe Harbor Applies for the Independent Reason that Plaintiff**
                          **Fails to Adequately Allege Actual Knowledge of Falsity**
17

18          Defendants demonstrated that the Safe Harbor's independent second prong also protects

19  the challenged statements because the Complaint fails to allege particularized facts giving rise to

20  a strong inference that Defendants had *actual knowledge* that the statements were false when

21  made.  *Id.* at 15.  In response, Plaintiff argues that negligence is the applicable standard, even for

22  forward-looking statements.  The only authority Plaintiff cites for this proposition is one

23  sentence of dicta in the unpublished decision *Knollenberg v. Harmonic, Inc.*, 152 F. App'x 674,

24  682 (9th Cir. 2005).  Opp. at 6.  *Harmonic* did not involve an attack on forward-looking

25  statements and did not address the application of the PSLRA Safe Harbor to the Section 14(a)

26  claims.  152 F. App'x at 682-83.  Moreover, the only authority *Harmonic* cited for its dicta was

27  *In re McKesson HBOC, Inc. Securities Litigation*, 126 F. Supp. 2d 1248, 1267 (N.D. Cal. 2000),

28  but *McKesson* did not discuss application of the PSLRA Safe Harbor.  In published decisions

squarely addressing the Safe Harbor, the Ninth Circuit has repeatedly held that *actual knowledge* of falsity is required for forward-looking statements.  *Quality Sys.*, 865 F.3d at 1149; *Cutera*, 610 F.3d at 1112-13; *In re Daou Sys., Inc.*, 411 F.3d 1006, 1021 (9th Cir. 2005).  Here, Plaintiff's failure to allege particularized facts inferring actual knowledge of falsity (*infra* p. 13) triggers the Safe Harbor's protection.  MTD at 15.

### B. Plaintiff Does Not Adequately Allege a False or Misleading Statement of Opinion

#### 1. Plaintiff Fails to Plead Specific Facts Showing Both Objective and Subjective Falsity

As Defendants showed, even if the challenged statements are not protected by the Safe Harbor, Plaintiff fails to adequately allege that the statements were false or misleading.  *Id.* at 16-20.  Plaintiff fails to allege facts showing both subjective and objective falsity—that the Updated Case C Projections were objectively incorrect when made, and that Defendants did not subjectively believe in them.  *Id.*  Plaintiff responds that, under *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*, 135 S. Ct. 1318 (2015), he only needs to plead the existence of a material omission that renders Defendants' opinion misleading.  Opp. at 8. Plaintiff is wrong.

*Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991), is directly on point and controlling.  There, the Supreme Court squarely held that a Section 14(a) claim attacking an opinion in a proxy statement for a shareholder vote on a merger requires the plaintiff to show *both* that the opinion was not actually believed *and* was objectively false.  *Id.* at 1096 ("We therefore hold disbelief or undisclosed motivation, standing alone, insufficient to satisfy the element of fact that must be established under § 14(a)" and proof of objective falsity is also required).  Nothing in *Omnicare* suggests that the Court was overruling the rule for Section 14(a) cases established by *Virginia Bankshares.*  To the contrary, *Omnicare* cited *Virginia Bankshares* as the controlling law "when corporate directors' statements of opinion in a proxy solicitation give rise to liability under § 14(a)."  *Omnicare*, 135 S. Ct. at 1326 n.2.  Thus, after *Omnicare*, courts continue to apply the subjective/objective falsity test from *Virginia Bankshares* to Section 14 claims attacking opinion statements.  *See* MTD at 15; *FEI*, 289 F. Supp. 3d at 1175; *Trahan*, 308 F. Supp. 3d at 987, 990.

1   Indeed, even Plaintiff's cited cases applied the *Virginia Bankshares* requirement of both objective

2   and subjective falsity.  Opp. at 12-13; *Precision*, 2017 WL 4453561, at *7 ("[M]isleading opinions

3   give rise to a claim 'only if the complaint alleges with particularity that the statements were both

4   objectively and subjectively false or misleading.'" citation omitted)); *In re Hot Topic, Inc. Sec.*

5   *Litig.*, No. CV 13-02939 SJO (JCx), 2014 WL 7499375, at *5 (C.D. Cal. May 2, 2014)

6   ("[P]laintiff must not only allege that the defendants subjectively believed their statements were

7   false, but also that the statements were objectively false.").  Plaintiff's suggestion that *Virginia*

8   *Bankshares* only applies to allegedly false statements, not statements allegedly misleading by

9   omission (Opp. at 12), is also incorrect.  *Virginia Bankshares* dealt directly with omissions.  501

10   U.S. at 1094 (discussing misleading nature of opinion statement because of "facts omitted from

11   the statement"); *see id.* at 1098.[4]  Plaintiff must, but has not, alleged both objective and subjective

12   falsity.

        **a.**      **Plaintiff Fails to Plead that the Updated Case C Projections**
                **Were Objectively False**

15   Plaintiff has no legitimate factual basis to assert that the Updated Case C Projections were

16   objectively false.  *First*, Plaintiff argues that more optimistic statements made by Gigamon earlier

17   in 2017 show that the Updated Case C Projections were false.  MTD at 17.  Defendants showed,

18   however, that those optimistic statements were made well before the surprisingly poor third

19   quarter.  These earlier statements thus cannot satisfy the PSLRA requirement that Plaintiff plead

20   particularized *contemporaneous facts* showing that the challenged statement was false when made.

21   *Id.* at 16-17; *Trahan*, 308 F. Supp. 3d at 990-91.  Plaintiff offers no response, and merely reiterates

22   his inadequate allegations.  Opp. at 10, 16 n.7.

23   *Second*, Plaintiff argues that Gigamon's May 3, 2018 press release, stating that Gigamon

24   had a "record-setting close . . . in 2017," demonstrates that the Updated Case C Projections were

---

26       [4] Plaintiff cites *Cowan* as an example of a Section 14 case applying *Omnicare*.  Opp. at 9.
But *Cowan* incorrectly did not even consider *Virginia Bankshares*.  2018 WL 3243975, at *9.

27   Plaintiff's citation to *MetLife* is wholly inapposite as the case did not concern Section 14(a); the
court applied *Omnicare* to a Section 10(b) claim that defendant had inadequate death-benefit

28   reserves.  Opp. at 9; *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, No. 12-cv-0256
(LAK), 2016 WL 6652731, at *7, *10 (S.D.N.Y. Nov. 10, 2016).

false when made.  MTD at 16-17.  But as Defendants showed, the Updated Case C Projections *did* forecast a record-setting close to 2017 – specifically, the highest quarterly and yearly revenues in Gigamon's history.  *Id.* at 9, 16.  Thus, the May 3, 2018 press release is consistent with the Board's statement that the Updated Case C Projections appeared to reflect a better estimate of Gigamon's long-term prospects.  *Id.* at 16-17.  And, in any event, Plaintiff has not pleaded any *contemporaneous* facts showing that the Updated Case C Projections were false when made.

Plaintiff cannot escape by arguing that Defendants are making an "improper factual argument."  Opp. at 17.  It is Plaintiff's burden to plead, with particularity, specific contemporaneous facts that contradict or are "necessarily inconsistent with" the challenged statements.  *In re Read-Rite Corp.*, 335 F.3d 843, 848 (9th Cir. 2003), *abrogated on other grounds as recognized in S. Ferry, L.P. No. 2 v. Killinger*, 542 F.3d 776, 782-84 (9th Cir. 2008); *see also Ronconi v. Larkin*, 253 F.3d 423, 433 (9th Cir. 2001) (plaintiff failed to allege falsity based on company's later statement where the later statement was not inconsistent with prior statement).  Plaintiff points to the May 3 statement.  But that statement is not "necessarily inconsistent with" the challenged Updated Case C Projections, which predicted a "record-setting close" to 2017.  Plaintiff's failure to meet his pleading burden is fatal to his claim.  *Read-Rite*, 335 F.3d at 848.  MTD at 9, 16.[5]

Plaintiff does not dispute that the Updated Case C Projections projected "record-setting" revenues for Q4 2017 and FY 2017.  MTD at 16.  Plaintiff instead suggests the Court should read the plain words in the May 3 press release to mean something different than what they say.  According to Plaintiff, the phrase "record-setting close" should be blue-penciled and read to mean "record-setting *year-over-year growth*."  Opp. at 17.  That is not what the press release stated.  ¶ 12.  The press release specifically spoke about year-over-year growth for Q1 2018, but pointedly *did not* say that Gigamon had *record year-over-year growth* in either Q4 2017 or Q1 2018.  *Id.*

---

[5] Plaintiff's reliance on *Azar v. Blount Int'l, Inc.*, No. 3:16-cv-483-SI, 2017 U.S. Dist. LEXIS 39493 (D. Or. Mar. 20, 2017) (Opp. at 17) is misplaced.  There, management allegedly prepared downgraded projections to justify a merger while continuing to rely on more optimistic projections and telling buyers they "anticipated improved third quarter results and [had] greater certainty that the Company would meet year-end targets." *Blount*, 2017 U.S. Dist. LEXIS 39493, at *7-8, *13.  Plaintiff here makes no similar allegations of *contemporaneous* facts suggesting that the Updated Case C Projections were inaccurate (nor could he). *Id.*

1   Indeed, Plaintiff's proposed reading is demonstrably wrong.  Record-setting year-over-year

2   growth would have exceeded 40%.  *See* MTD at 7.  No facts are pled suggesting that Gigamon

3   achieved or predicted 40% growth in 2017.  Heading into Q3, after only 4% growth in Q1 and

4   negative 8% growth in Q2, Gigamon guided to 3% growth in Q3 and said that it hoped to return to

5   only 20%-25% growth in Q4 (*id.*; ¶¶ 91, 99); and, Gigamon missed Q3 guidance, reporting

6   negative 5% growth (MTD at 7; ¶ 111).  Indeed, even the Case B projections created in June 2017

7   that Plaintiff claims are the right projections predicted only 32% growth.  MTD at 7, 9.

8         Plaintiff's argument that the May 3 press release *might* be interpreted as inconsistent with

9   the Updated Case C Projections underscores the inadequacy of the Complaint.  The PSLRA

10  requires Plaintiff to allege particularized facts that "*directly contradict*" or are "*necessarily*

11  *inconsistent with*" the challenged statement.  *Read-Rite*, 335 F.3d 843, 848 (emphasis added); *id.*

12  at 846 (falsity may be shown by a later statement "if the later statement directly contradicts or is

13  inconsistent with the earlier statement"); *Ronconi*, 253 F.3d at 432 (later statements did not show

14  falsity where they were "not necessarily inconsistent with" earlier statements).  There is no factual

15  basis pled, or reasonable basis to believe, that after its difficult 2017 Gigamon somehow soared to

16  stratospheric growth in Q4 that pulled the overall 2017 growth rate above 40%.  Plaintiff cannot

17  distort plain language in an effort to allege falsity.  *See West v. eHealth, Inc.*, No. 3:15-cv-00360-

18  JD, 2016 U.S. Dist. LEXIS 33429, at *7-9, *18-19 (N.D. Cal. Mar. 14, 2016) (later statement that

19  company saw "pronounced deviations" in churn did not show falsity of prior statements that churn

20  was "not 'out of the ordinary'" and "in line with . . . norms"; Plaintiffs must allege facts showing

21  that statement "was objectively false when made, not simply that it *could be* false under plaintiffs'

22  adopted definition." (emphasis added)); *In re Jones Soda Co. Sec. Litig.*, No. C07-1366 RSL, 2009

23  U.S. Dist. LEXIS 9297, at *15-17 (W.D. Wash. Feb. 9, 2009) (later statement that company was

24  "now investing" does not mean company had not previously invested); *see also Yourish v. Cal.*

25  *Amplifier*, 191 F.3d 983, 996-97 (9th Cir. 1999) (statement that large shipments would not be

26  repeated did not contradict prior statement that company expected "significant follow-along

27  business"); *Hampton v. Root9B Techs., Inc.*, 897 F.3d 1291, 1301 (10th Cir. 2018) (although

28  possible that facts alleged contradicted defendant's statements, facts alleged must be, and were

1  not, "inherently inconsistent" with statements); *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540

2  F.3d 1049, 1064-65 (9th Cir. 2008) (plaintiffs' proposed interpretation of disclosures was not

3  "fact" that must be accepted as true but unwarranted inference).

4  　　　　In fact, even under Rule 8's relaxed pleading standard, a plaintiff must allege facts

5  showing a *plausible* claim, not just a *possibility*.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557,

6  570 (2007) (Rule 8 requires facts showing claims are plausible, not merely a "possibility" or

7  "conceivable").  The Complaint is devoid of a single contemporaneous factual allegation

8  supporting the speculation that Gigamon achieved *record year-over-year growth* in Q4 2017.

9  Plaintiff's allegations thus fail even the *Twombly* plausibility test (*id.* at 570), and fall far short of

10  satisfying the requirements of Rule 9(b) and the PSLRA applicable here.  *Read-Rite*, 335 F.3d at

11  848.[6]

12  　　　　　　　**b.**　　　**Plaintiff Fails to Plead that Defendants Did Not Believe that**
**the Updated Case C Projections Reflected a Better Estimate of**
13  　　　　　　　　　　　**Gigamon's Long-Term Prospects**

14  　　　　Defendants demonstrated that Plaintiff fails to allege facts showing subjective falsity—that

15  Defendants did not believe that the Updated Case C Projections reflected a better estimate of

16  Gigamon's long-term prospects than the Case B Projections.  MTD at 17-20.  Plaintiff's theory

17  that the Board's decision to use the Updated Case C Projections was "sudden and unsupported"

18  ignores the economic reality of Gigamon's poor performance during 2017 and mischaracterizes

19  the Proxy's description of events.  *Id.* at 18-20.  Plaintiff ignores Defendants' arguments, instead

20  simply repeating his mischaracterizations of the Proxy.  Opp. at 14-16.

21  　　　　For example, Plaintiff asserts that the Board's decision to use the Updated Case C

22  Projections was "sudden" (*id.* at 14) because the Board supposedly reaffirmed the Case B

23  Projections on October 14, 2017, knowing of poor Q3 2017 results, only to reject them on October

24  24, 2017 to justify Elliott's offer.  *Id.* at 14-15, 18.  No fact alleged in the Complaint or stated in

25  the Proxy suggests that the Board reaffirmed the Case B projections on October 14.  To the

26  _____

27  　　　[6] Plaintiff also disingenuously argues that the Court should penalize Defendants for failing to
disclose Gigamon's Q4 2017 revenues in their motion papers (Opp. at 18), while simultaneously
arguing that Defendants are not allowed to introduce factual evidence (*id.* at 17).  The pleading

28  burden is squarely on Plaintiff, and Defendants have no evidentiary burden.  *See Tellabs, Inc. v.
Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007).

1   contrary, the Proxy states that on <u>October 5, 2017</u>, the Board conclusively determined that the

2   Case B Projections "could no longer be relied upon" and "were outdated due to actual second and

3   third quarter performance and the trend lines that such results suggested for the full year and

4   beyond."  Gavin Decl. Ex. 1 at 41.  In fact, the Proxy reflects that the Board had concerns about

5   the reliability of the Case B Projections on September 21, 2017, when management reported

6   "troubling signs of softening" in the quarter.  *Id.* at 40.  No facts are alleged to support an

7   inference that the Board suddenly decided to use the Updated Case C Projections.  Opp. at 14.

8        Plaintiff's argument that the Board's only reason for using the Updated Case C Projections

9   was to placate Elliott likewise fails for lack of factual allegations.  *Id.* at 14-15.  No facts are

10  alleged plausibly suggesting that Defendants' motivation for favoring the Updated Case C

11  Projections was anything *other than* a good faith assessment of the economic realities.  *Id.*

12        As Defendants showed, this case is almost exactly like *FEI*, 289 F. Supp. 3d 1162.  MTD

13  at 19-20.  Plaintiff ignores *FEI*, relying instead on *Hot Topic* (Opp. at 12-13, 19), which is readily

14  distinguishable.  In *Hot Topic,* defendants relied on a set of lower projections even though, prior to

15  the merger, Hot Topic had "consistently met or exceeded its own projections and goals" (*Hot*

16  *Topic*, 2014 U.S. Dist. LEXIS 180513, at *4); here, however, Plaintiff concedes that Gigamon's

17  growth slowed drastically and that it missed its guidance for Q4 2016, Q2 2017, and Q3 2017

18  (¶¶ 56, 111; Opp. at 14).  Moreover, in *Hot Topic*, defendants negotiated a separate deal to remain

19  invested in the company after the merger, suggesting they did not believe the merger price was

20  adequate.  2014 U.S. Dist. LEXIS 180513, at *7-8.  *Precision*, upon which Plaintiff also relies

21  (Opp. at 13), is also inapposite.  *Supra* p. 4.

22        Plaintiff fails to meet his burden to allege subjective and objective falsity.

23           **2.**      **Plaintiff Fails to Allege a Claim Under *Omnicare***

24        Even under *Omnicare*, Plaintiff's allegations would be woefully inadequate.  *Omnicare*

25  made clear that the securities laws do "not allow investors to second-guess inherently subjective

26  and uncertain assessments."  135 S. Ct. at 1327.  "Reasonable investors understand that opinions

27  sometimes rest on a weighing of competing facts" and therefore it is "not necessarily misleading

28  when an issuer knows, but fails to disclose, some fact cutting the other way."  *Id.* at 1329.

1   Plaintiffs must allege omitted facts that "conflict with what a reasonable investor would take from

2   the statement itself," such as facts showing that the speaker "failed to conduct *any* investigation"

3   to support the opinion or was aware of facts "which would *preclude such an opinion.*"  *Id.* at 1329,

4   1330 (emphasis added).  "That is no small task for an investor."  *Id.* at 1332.

5        Plaintiff here comes nowhere close.  Plaintiff does not allege that Defendants failed to

6   conduct an investigation or failed to thoroughly review Gigamon's economic situation before

7   deciding that the Updated Case C Projections appeared to reflect a better estimate of Gigamon's

8   long-term prospects.  Rather, he suggests that "Gigamon's performance had markedly improved"

9   in Q4 2017, making the poor Q3 2017 results an "outlier."  Opp. at 9-11.  This is not a fact, but

10  merely an unsupported *conclusion* drawn incorrectly from the May 3, 2018 press release.  *Id.* at 9.

11  As discussed above, the May 3 press release is consistent with the Updated Case C Projections,

12  which projected a "record-setting close."  *Supra* p. 8-9.  Plaintiff has failed to identify any omitted

13  fact that "would preclude" Defendants' opinion, as required under *Omnicare.*  135 S. Ct. at 1329-

14  30; *see, e.g.*, *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856

15  F.3d 605, 619 (9th Cir. 2017) (where allegation was "not a *fact*, but rather Plaintiff's *conclusion*"

16  it "cannot serve as an omission of fact that sufficiently pleads falsity.").

17  **II.      PLAINTIFF FAILS TO ALLEGE PARTICULARIZED FACTS GIVING RISE TO
            A STRONG INFERENCE OF THE REQUIRED STATE OF MIND**
18

19       Plaintiff fails to allege facts giving rise to a strong inference of actual knowledge of

20  falsity.  MTD at 23.  Plaintiff responds that Defendants knew by the date of the shareholder

21  meeting (December 22, 2017) that Q4 2017 results would be higher than the Updated Case C

22  Projections.  *See* Opp. at 1, 10, 22.  Plaintiff pleads no basis to allege that Q4 2017 results *were*

23  higher than the Updated Case C Projections, let alone that Defendants knew this by December 22.

24  He cites no internal documents, no confidential witnesses, no contemporary contrary statements

25  by management or anyone else, to support the theory.  His *sole* support, the May 3, 2018 press

26  release, does not support his theory.  *Supra* p. 8-11.  Plaintiff further fails to allege facts

27  supporting his speculation that Defendants would have known of Q4 results by December 22.

28  Indeed, Plaintiff concedes (a) that Gigamon had a history of missing revenue projections (¶¶ 56,

111; Opp. at 14), (b) that Gigamon experienced spikes in bookings late in the quarter (¶ 91), and (c) that Q3 17 quarter-end results were not available internally until the quarter ended (¶ 111). Thus, there is no basis to infer that Q4 2017 results differed from the Updated Case C Projections or were known until after quarter-end.

Even under a negligence standard, Plaintiff is required to allege facts giving rise to a *strong inference* of negligence and fails to do so.  MTD at 23-24.  Plaintiff's citation to a 7th Circuit case to argue that the strong inference standard does not apply (Opp. at 6) is inapposite; courts in the Ninth Circuit require a strong inference of negligence, as Plaintiff's own authorities show.  *See Blount*, 2017 WL 1055966, at *9 (cited in Opp. at 7, 16, 17) ("a Section 14(a) plaintiff must plead with particularity facts that give rise to a strong inference of negligence" (quoting *Harmonic*, 152 Fed. App'x at 683 (cited in Opp. at 6))); *Precision*, 2017 WL 4453561, at *12-13 (same) (cited *passim* in Opp.); *Kelley v. Rambus, Inc.*, No. C 07-1238 JF (HRL), 2008 U.S. Dist. LEXIS 100319, at *11 (N.D. Cal. Dec. 9, 2008) (same) (cited in Opp. at 7).

Plaintiff cites *Brown v. Brewer*, No. CV 06-3731-GHK (SHx), 2010 WL 2472182 (C.D. Cal. June 17, 2010), for the proposition that he only needs to allege falsity and the director's opportunity to review and edit the proxy to allege negligence.  Opp. at 7.  That is wrong, and to the extent *Brown* can be read to support that proposition, it is incorrect.  *Brown* was a summary judgment case in which the plaintiff had sufficient evidence to raise triable issues on both material omissions in the proxy and each director's involvement.  2010 WL 2472182, at *25.  It did not address PSLRA pleading standards and relied on pre-PSLRA cases decided in the Second Circuit. *Id.* at *24.[7]  The PSLRA requires more than allegations of falsity and an opportunity to review and edit the proxy.  For example, in *Blount*, 2017 WL 1055966, at *9 (cited in Opp. at 7), plaintiff alleged the directors "improperly deferred" to management "whom they knew to be conflicted," had conflicted bankers prepare the financial analyses, and omitted entire sets of projections from

---

[7] Plaintiff mischaracterizes *Kelley v. Rambus*, which did *not* hold that it was sufficient to allege a misstatement coupled with each director's position (Opp. at 7).  The court in *Kelley* dismissed plaintiffs' claims, and said plaintiffs "*might* be able to establish a strong inference of . . . negligence" "*if* Plaintiffs could provide more detailed facts" about the underlying alleged misconduct.  2008 U.S. Dist. LEXIS 100319, at *24 (emphasis added).

the proxy.  *See also, e.g.*, *In re Maxim Integrated Prods.*, 574 F. Supp. 2d 1046, 1062-63, 1066 (N.D. Cal. 2008) (cited in Opp. at 8) (allegations that all directors approved backdated options and most received backdated options, which the proxy misrepresented); *McKesson*, 126 F. Supp. 2d at 1267 (plaintiff failed to adequately allege negligence where no factual allegations suggested that defendants "could have known, even with reasonable diligence," about the "massive accounting fraud.").  Here, Plaintiff has not alleged the directors improperly deferred to conflicted management, or that any director shirked his or her duties to, for example, carefully consider management's reports on the state of the company before selecting between the different sets of projections.  More is required, and Plaintiff has failed to allege facts giving rise to a strong inference of negligence.[8]

## CONCLUSION

For all of the foregoing reasons, the Court should dismiss Plaintiff's Complaint with prejudice.

DATED:  January 14, 2019

WILSON SONSINI GOODRICH & ROSATI
PROFESSIONAL CORPORATION

s/   Jerome F. Birn, Jr.
JEROME F. BIRN, JR.

*Attorneys for the Gigamon Defendants*

---

[8] Defendants also explained that Plaintiff failed to allege his additional claims that the Proxy omitted various additional details about the projections and Board discussions.  MTD at 20-23. Plaintiff does not dispute that he has failed to adequately allege these claims.

1

2

3

4

5

**ATTESTATION**

I, Elizabeth R. Gavin, am the ECF User whose identification and password are being used to file the Gigamon Defendants' Request for Judicial Notice and Incorporation by Reference.  In compliance with Civil Local Rule 5-1, I hereby attest that Jerome F. Birn, Jr. concurred in this filing.

6

7

DATED:  January 14, 2019

8

9

                                                  s/   Elizabeth R. Gavin
                                                       Elizabeth R. Gavin

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28